IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM H. NGUYEN,** *Admin. of the Estate of Long Thranh Nguyen, Deceased,*<br><br>Plaintiff,<br><br>*v.*<br><br>**CSAA GENERAL INSURANCE COMPANY,**<br><br>Defendant. | **CIVIL ACTION**<br><br>**NO. 24-2643-KSM** |

**MEMORANDUM**

**MARSTON, J.**                                                                              **March 10, 2026**

Plaintiff William H. Nguyen, Administrator of the Estate of Long Thranh Nguyen, Deceased, brought this lawsuit for breach of contract and bad faith denial of insurance coverage under Pennsylvania law against Defendant CSAA General Insurance Company.  (*See generally* Doc. No. 1-1.)  The Amended Complaint details how Long Thranh Nguyen was struck by two vehicles while walking in a pedestrian crossing.  (*Id.* at ¶¶ 8–10.)  Plaintiff, acting as administrator of Nguyen's estate, filed wrongful death and survival actions against the tortfeasors.  (*Id.* at ¶ 11; *see also* Doc. No. 18-2 (Petition to Settle Wrongful Death and Survival Actions in underlying case).)  After settling those claims for $355,000,[1] he filed this action against Nguyen's auto insurance provider, seeking to recover underinsured motorist ("UIM") benefits under the policy in effect at the time, which carried a $100,000 per event policy limit. (Doc. No. 1-1 at ¶¶ 6, 14, 16.)  The parties have settled this action, and Plaintiff now petitions the Court to approve and apportion the settlement proceeds.  (Doc. No. 18.)

---

[1] One tortfeasor settled for $225,000 and the other for $135,000.  (Doc. No. 18-2 at 6.)

## I.     LEGAL STANDARD

Section 3323 of Pennsylvania's Probate, Estates, and Fiduciaries Code requires court approval of any settlement involving claims brought on behalf of or against an estate.  *See* 20 Pa. Stat. and Cons. Stat. § 3323(a); *Schuster v. Reeves*, 589 A.2d 731, 734 (Pa. Super. Ct. 1991) ("The survival action . . . was a claim on behalf of the decedent estate, and it could not be settled without court approval.  Without such approval the attempt to settle and release the estate's claims was ineffective."); *Moore v. Gates*, 580 A.2d 1138, 1141 (Pa. Super. Ct. 1990) ("Before a survival claim can be settled on behalf of a decedent's estate, . . . such a settlement must be judicially approved.").[2]  "The requirement of court approval of survival actions is intended to protect the estate, as well as the creditors and beneficiaries thereof," and "a court may refuse to approve a settlement of a survival action which is inadequate."  *Moore*, 580 A.2d at 1141; *see also Soares v. McClosky*, 466 F. Supp. 703, 707 (E.D. Pa. 1979) (explaining that § 3323 "serves several substantive ends:  it protects potential beneficiaries, assures that the taxing authority gets its due, and shelters the decedent's representative from subsequent liability by eliciting a judicial determination whether a proposed settlement (or other termination) sufficiently protects the decedent's estate").  "It follows that where wrongful death and survival actions are settled for a single amount, the amount apportioned to the survival action must be approved by a court having jurisdiction."  *Moore*, 580 A.2d at 1141.  In approving the proposed settlement, the court may

---

[2] "Pennsylvania courts have long recognized that a wrongful death action is separate and distinct from a survival action."  *Rickard v. Am. Nat'l Prop. & Cas. Co.*, 173 A.3d 299, 305 (Pa. Super. Ct. 2017). Wrongful death claims are meant to compensate "the spouse, children, or parents of a deceased for pecuniary loss they have sustained as a result of the death of the decedent."  *Id.* (quoting *Kiser v. Schulte*, 648 A.2d 14, 4 (Pa. 1994)).  Survival claims, by contrast, are meant to compensate "the decedent herself through the legal person of her estate."  *Id.* (quoting *Kiser*, 648 A.2d at 4)); *see also id.* ("[A] survival claim is simply the action the decedent could have brought for the injuries he suffered prior to his death and is generally for the benefit of the estate.").

2

also "approve an agreement for the payment of counsel fees and other proper expenses incident to such action."  20 Pa. Sta. and Cons. Stat. § 3323(b)(1).

## II.   DISCUSSION

The Court addresses the adequacy of the proposed settlement before turning to the Plaintiffs' apportionment of settlement funds and attorney's fees.[3]

### A.   Adequacy

Section 3323 "contemplates a judicial inquiry into the propriety of a proposed compromise or settlement by the estate, whether or not it is contested, consistent with the court's supervisory jurisdiction over decedents' estates, and an adjudication based thereon."  *Krause v. B&O R.R.*, 33 Pa. D. & C.3d 458, 466 (Pa. Ct. Comm. Pl. 1983); *Tamasy v. Yough Sch. Dist.*, 2:18-cv-01236-NR, 2019 WL 5864893, at *1 (W.D. Pa. Nov. 8, 2019); *see also Moore*, 580 A.2d at 1141 ("[A] court may refuse to approve a settlement of a survival action which is inadequate.").  In performing this inquiry, the court must "exercise independent judgment on the whole case," and decide whether the proposed settlement is "fair and reasonable under the circumstances."  *Krause*, 33 Pa. D. & C.3d at 466 (quotation marks omitted).

---

[3] On March 14, 2025, the Court issued an Order dismissing the action with prejudice pursuant to Local Rule 41.1(b).  (Doc. No. 17); *see also* L. Civ. R. 41.1(b) ("Whenever in any civil action counsel shall notify the deputy clerk or the judge to whom the action is assigned that the issues between the parties have been settled, the deputy clerk shall, upon order of the judge to whom the case is assigned, enter an order dismissing the action with prejudice, without costs, pursuant to the agreement of counsel.").  The Order specified that the Court would, however, retain jurisdiction for 90 days while the settlement was finalized.  (Doc. No. 17 at 1 n.1.)  Plaintiff filed the current petition approximately five months after this ninety-day period had lapsed.  (Doc. No. 18.)  However, contemporaneous with this Memorandum, the Court files an Order modifying the March 14, 2025 Order such that we retain jurisdiction to consider the petition.  *See* 20 Pa. Stat. and Cons. Stat. § 3323(b)(1) ("Whenever it is desired to compromise or settle an action in which damages are sought to be recovered on behalf of an estate, any court or division thereof in which such action is pending and which has jurisdiction thereof may . . . make an order approving such compromise or settlement."); *Moore*, 580 A.2d at 1141 ("Where a survival action is pending, . . . a settlement thereof may be approved by the court in which it is pending . . . .").

Because "[t]he court must independently evaluate the proposed settlement petition," the petition must "provide the court with sufficient information on which to base its determination," including "all relevant facts and the reasons why the administrator of the . . . estate believes the settlement is desirable and why it is in the estate's best interest to settle the action." *Rodi v. Williams*, Civil Action No. 4:12–1379, 2015 WL 1863006, at *2 (M.D. Pa. Apr. 23, 2015) (quotation marks omitted and alterations adopted). Under this analysis, the court considers the strengths and weaknesses of the particular case, including whether the plaintiff faces any "issues of proof that could hamstring their efforts to establish liability" because these issues go to the settlement value of the case. *Tamasy*, 2019 WL 5864893, at *2. It is also "relevant . . . how many medical bills and liens regarding the care of the deceased . . . are to be handled by the settlement." *Rodi*, 2015 WL 1863006, at *2.

Here, the parties have agreed to settle this case for a total sum of $35,000. (Doc. No. 18 at ¶ 12.) Plaintiff's counsel and Plaintiff himself aver that the proposed settlement is "reasonable" in light of the surrounding circumstances. (*Id.* at ¶¶ 13–14; *see also id.* at 16 (Affidavit of Michael I. McDermott, Esquire); *id.* at 17 (Certification of Petitioner, William H. Nguyen).) *See Tamasy*, 2019 WL 5864893, at *1 ("[The court] gives due regard to the advice of the experienced counsel in this case who recommend the settlement and who have negotiated this settlement at arms-length and in good faith."). Our independent review of the facts confirms that $35,000 is an adequate sum under the circumstances. Plaintiff's counsel has identified multiple weaknesses in the case, including the fact that the incident occurred at night while the "decedent was wearing all black crossing a poorly lit intersection in a horizontal angle." (Doc. No. 18 at 16.) In addition, the decedent was "under the influence" of barbiturates, cannabinoids, and alcohol at the time and the underlying tortfeasors had the right of way when their vehicles

entered the intersection.  (*Id.*; *see also* Doc. No. 18-2 at 7.)  There are thus legitimate disputes over the negligence of the respective individuals involved in the accident.  In addition, the deceased's UIM policy had a per event limit of $100,000, and the extent to which Plaintiff could recover even this amount may be limited as Defendant has represented that it is "entitled to a credit of the full value of the underlying policy limits for" the two tortfeasors, which together total more than $10 million.  (*See* Joint Rule 26(f) Report at 3.)

In addition to considering the case's potential strengths and weaknesses, we also consider the costs, economic and emotional, of fully litigating this case.  For one, the parties stated in their Joint Rule 26(f) Report that they intended to conduct five depositions each.  (*Id.*)  They also anticipated using experts for both liability and damages, including experts for accident reconstruction and toxicology.  (*Id.*)  Taken collectively, these representations suggest that fact and expert discovery could have been a lengthy and expensive process, requiring the decedent's family to relive his tragic death over many months.

Finally, we consider whether there are any "medical bills and liens regarding the care of the deceased" that will need "to be handled by the settlement."  *Rodi*, 2015 WL 1863006, at *2.  Here, the estate paid the Pennsylvania Department of Human Services $300 on November 6, 2025 for medical services rendered at the accident scene.  (Doc. No. 18 at 8; *see also* Doc. No. 18-2 at 19–20; Doc. No. 18-7.)  The United States Social Security Administration has paid no benefits on the decedent's behalf and has no lien against the estate that would need to be accounted for in the settlement.  (*Id.*; *see also* Doc. No. 18-2 at 15.)

Under these circumstances, we find that $35,000 dollars is an adequate amount to settle Plaintiff's claims.  *See In re Hughes Estate*, 59 Pa. D. & C.2d 680, 682 (Pa. Ct. Comm. Pl. 1972)

("We have no difficulty in approving the amount of the settlement" because the "risk of recovering something less than the amount achieved by the settlement was a serious one.").

### B.    Apportionment

Plaintiff has proposed apportioning the settlement funds as follows:

| | | | |
|---|---|---|---|
| 1. | TOTAL SETTLEMENT | | $35,000.00 |
| | a. | To Michael I. McDermott, Esquire (counsel fees) | $11,666.00 |
| 2. | Balance | | $23,334.00 |
| 3. | Wrongful Death Claim (98%) | | |
| | a. | To Yen Le (wife) | $11,433.66 |
| | b. | To William Nguyen (son) | $11,433.66 |
| 4. | Survival Claim (2%) | | |
| | a. | To William H. Nguyen, as Administrator/Executor of the Estate of Long Thranh Nguyen | $466.68 |

(Doc. No. 18 at 9.)  The Court finds this proposed allocation reasonable and fair.

"Pennsylvania cases do not explicitly address settlement allocation formulas," but "Pennsylvania law clearly delineates the requirements to satisfy" a survival and wrongful death action award. *Smith v. Sandals Resort Int'l, Ltd.*, 709 F. Supp. 2d 350, 358 (E.D. Pa. Apr. 19, 2010).  "Survival actions under the Pennsylvania Survival Act, 42 Pa. C.S. § 8302, are brought by the administrator of the estate to benefit the decedent's estate." *Rodi*, 2015 WL 1863006, at *1.  "Survival action damages compensate the decedent's estate for losses from the tort," and account for "decedent's pain and suffering, loss of gross earning power from the date of injury until death, and probable earning during his life expectancy minus the probable cost of

maintaining himself and wrongful death damages." *Smith*, 709 F. Supp. 2d at 358. "Survival action proceeds are divided among the heirs of the decedent, either through the decedent's will or by the laws of intestate, regardless of pecuniary loss." *Id.*

By contrast, wrongful death "damages compensate the spouse, children, or parents of decedent for the pecuniary loss, i.e., contributions the decedent would have made for their shelter, food, clothing, medical care, education, entertainment, gifts, and recreation, they would have received from him had the decedent lived." *Id.* at 356. "Pecuniary loss also includes the pecuniary value of the services, society, and comfort the relatives would have received from the decedent." *Id.* Because Pennsylvania policy "favors wrongful death beneficiaries over estate beneficiaries," courts have "approved settlements allocating large percentages to the wrongful death action over the survival action." *Id.* at 358. And "there is nothing inherently suspect or improper about a settlement allocation favoring wrongful death beneficiaries." *Tamasy*, 2019 WL 5864893, at *2–3.

Applying these principles, we find that Plaintiff's proposed apportionment is a reasonable allocation of the settlement funds. Plaintiff proposes apportioning 2% of the proceeds (after attorney's fees and costs) to his survival claim. (Doc. No. 18 at 9.) The remaining 98% of the net proceeds would go to the wrongful death action and to the decedent's wife and son as the sole wrongful death beneficiaries. (*See id.*) Although the survival action is allotted a lesser percentage than that given to the wrongful death claim, we note that these allocations are the same ones approved by the state court in the settlement of Plaintiff's actions against the tortfeasors. (*See* Doc. No. 18-3.) And courts in this District have found apportionment reasonable even when the entire amount of the settlement is allocated to the wrongful death claim. *See Tamasy*, 2019 WL 5864893, at *2–3 (finding allocation of settlement funds

7

reasonable even though the parties allocated the entire amount to the wrongful death claim);

*Rodi*, 2015 WL 1863006, at *3 (same).

The smaller percentage (2%) for the survival action is also reasonable here because the

decedent's pain and suffering were relatively brief.  Medical personnel found him unresponsive

at the scene, having passed after being struck by the second tortfeasor's vehicle.  (Doc. No. 18-2

at 7.)  By contrast, the wrongful death beneficiaries have suffered substantial pecuniary losses

from the decedent's death.  Yen Le is unemployed, and William Nguen only recently graduated

from St. Joseph's University.  (Doc. No. 20 at 4.)  In addition to their pecuniary losses, both

beneficiaries have lost the companionship, comfort, and solace of a husband and father

respectively.  (Doc. No. 18 at 6.)  Last, as the Court noted above, there are no outstanding

medical bills or liens that need to be paid out of the estate.

For those reasons, and in light of Pennsylvania's policy favoring wrongful death

beneficiaries, we conclude that Plaintiff has proposed a reasonable allocation of the settlement

proceeds between the survival and wrongful death claims.

**C.     Attorney's Fees**

That leaves only the question of counsel fees.  Plaintiff proposes that 33.33% or $11,666

of the proposed settlement be apportioned to Michael I. McDermott, Esquire, for fees.  (Doc. No.

18 at 4.)[4]  The Court finds this apportionment reasonable given that Plaintiff's counsel

negotiated a fair and equitable settlement of the claims in this case.  *See, e.g.*, *Carter v. Wellpath

LLC*, No. 22cv1050, 2023 WL 6323095, at *2 (E.D. Pa. Sept. 28, 2023) (approving similar fee);

*see also King v. Nat'l R.R. Passenger Corp.*, No. 23cv3883, 2025 WL 1257254, at *2 (E.D. Pa.

---

[4] Attorney McDermott has waived recovery of the costs associated with filing and serving the Complaint.  (Doc. No. 18 at 5.)

May 1, 2025) ("In wrongful-death/survivor actions, courts have approved attorneys' fee awards of up to forty percent of the settlement proceeds, particularly where they reflect a previously agreed-upon contingency fee arrangement.").

III.     CONCLUSION

In sum, the Court finds that Plaintiff's proposed settlement and apportionment of settlement funds is adequate, fair, and reasonable under the circumstances.  An appropriate order follows.